SNELL & WILMER L.L.P.
Eric S. Pezold, Bar No. 255657
epezold@swlaw.com
Andrew B. Still, Bar No. 312444
astill@swlaw.com
600 Anton Blvd, Suite 1400
Costa Mesa, California 92626-7689
Telephone: 714.427.7000
Facsimile: 714.427.7799

Attorneys for Plaintiff
PS Funding, Inc.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PS FUNDING, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>ICG10 CAPITAL, LLC, a Florida limited liability company; WARREN IFERGANE, an individual; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 2:19-cv-07724<br><br>**Complaint for:**<br><br>**(1)   Breach of Contract;**<br><br>**(2)   Specific Performance; and**<br><br>**(3)   Fraud** |

Plaintiff PS Funding, Inc. ("PS Funding") alleges as follows:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a), because this is a civil action between citizens of different states, where the matter in controversy exceeds $75,000, exclusive of costs and interest.

2. This Court has personal jurisdiction over defendants because defendants expressly consented to the jurisdiction of the California courts in paragraph 8.10 of the Master Loan Sale Agreement, the contract that forms the basis for this action.

3. Venue is proper in this judicial district under 28 U.S.C. § 1391(a) and (b)(3), because (i) no defendant resides in California and (ii) neither a substantial part

of the events or omissions giving rise to the claim, nor a substantial part of the property that is the subject of this action is situated in this judicial district.  However, as stated above, defendants are subject to this Court's personal jurisdiction pursuant to their express consent to the same in the contract that forms the basis of this action.

## PARTIES

4. Plaintiff PS Funding is a real estate lending fund incorporated in and existing under the laws of the State of Delaware, and qualified and authorized to do business in the State of California.

5. Plaintiff is informed and believes and thereupon alleges, that defendant ICG10 Capital, LLC ("ICG10"), is, and at all times relevant herein was, a Florida limited liability company, with its principal place of business in Boca Raton, Florida, doing business throughout the United States.

6. Plaintiff is informed and believes and thereupon alleges, that defendant Warren Ifergane ("Ifergane"), is, and at all times relevant herein was, a resident of the state of Florida.

7. PS Funding does not know the true names or capacities of the defendants sued herein as DOES 1 through 50, inclusive, and will amend this complaint to allege such facts as soon as they are ascertained.  PS Funding is informed and believes and, on that basis, alleges, that the defendants, and each of them designated herein as DOES 1 through 50, inclusive, are in some manner responsible for the events and happenings herein alleged.

8. PS Funding is informed and believes and, on that basis, alleges that ICG10, Ifergane and the defendants named as Does 1 through 50, inclusive are and acted as agents, servants, employees, partners, co-venturers, or shareholders of each other with respect to the allegations herein alleged.

//
//
//

# GENERAL ALLEGATIONS

## A. The Master Loan Sale Agreement

9. On or about May 7, 2017, PS Funding and ICG10 entered into that certain *Master Loan Sale Agreement* (the "MLSA"), wherein PS Funding agreed to purchase, and ICG10 agreed to sell, all of ICG10's right, title and interest in and to certain Loans (as defined herein), and any and all of ICG10's rights, duties, and obligations in respect thereto pursuant to the terms of the MLSA and the Loan Purchase Certificates (as defined herein). A true and correct copy of the MLSA is attached hereto as **Exhibit 1**.

10. Pursuant to the MLSA, the parties agreed to the form of those certain *Loan Purchase Certificates* ("Loan Purchase Certificates"), pursuant to which ICG10 would sell individual Loans (as evidenced by a note, deed of trust, and/or other loan documents) to PS Funding. Entry into the Loan Purchase Certificates, all of which reference the MLSA, obligate PS Funding and ICG10 to each other pursuant to the terms of the MLSA and the Loan Purchase Certificates.

11. Pursuant to Section 2.11 of the MLSA, if the borrower related to any Loan fails to make any of the first three monthly payments due to PS Funding, upon written notice from PS Funding, ICG10 is required to repurchase such Loan from PS Funding within five business days.

## B. The Texas Loan

12. On or about September 18, 2018, pursuant to the MLSA, PS Funding and ICG10 entered into that certain *Loan Purchase Certificate* (the "Texas Loan Purchase Certificate"), whereby PS Funding succeeded to all right, title and interest of ICG10 under that certain loan made to Grove Enterprises, LLC (the "Texas Borrower") by ICG10 (the "Texas Loan"). A true and correct copy of the Texas Loan Certificate is attached hereto as **Exhibit 2**.

13. Pursuant to the Texas Loan Purchase Certificate, ICG10 agreed to sell, and PS Funding agreed to purchase, all of ICG10's right, title and interest in and to

the following:

   i.   That certain *Promissory Note* dated September 18, 2018 (the "Texas Note"), whereby the Texas Borrower, as maker, agreed to pay to ICG10 the principal amount of $2,168,869.00, plus interest, pursuant to the terms of the Texas Note, with payments beginning October 1, 2018.  A true and correct copy of the Texas Note is attached hereto as **Exhibit 3**.

   ii.   That certain *Deed of Trust, Security Agreement, and Assignment of Rents* dated September 18, 2018 (the "Texas Deed of Trust"), whereby the Texas Borrower pledged all of its right, title and interest in the real property located at 917 Main Street #2, Houston, Texas 77002 (the "Texas Property"), to ICG10, to secure its obligations under the Texas Note.  The Texas Deed of Trust was duly recorded in the Official Records of Harris County, Texas on September 20, 2018, at Document No. RP-2018-432474.  A true and correct copy of the Texas Deed of Trust is attached hereto as **Exhibit 4**.

   iii.   That certain *Assignment of Rents and Leases* dated September 18, 2018 (the "Texas Rents Assignment"), whereby the Texas Borrower pledged to ICG10 all of its right, title and interest to the leases and guaranties entered into by the Texas Borrower relating to the Texas Property, to secure its obligations under the Texas Note.  The Texas Rents Assignment was duly recorded in the Official Records of Harris County, Texas on September 20, 2018, at Document No. RP-2018-432475.  A true and correct copy of the Texas Rents Assignment is attached hereto as **Exhibit 5**.

   iv.   That certain *Guaranty* dated September 18, 2018, made and executed by Harold G. Polk, Jr. (the "Texas Guarantor"), whereby the Texas Guarantor agreed to absolutely, unconditionally, and irrevocably guarantee payment to ICG10 of any sums which the Texas Borrower owes ICG10, as well as the performance and discharge of all of the Texas Borrower's obligations, under the Texas Note (the "Texas Guaranty").  A true and correct copy of the Texas Guaranty

is attached hereto as **Exhibit 6**.

14.   Pursuant to the terms of the MLSA and the Texas Loan Purchase Certificate, ICG10 made and executed that certain *Allonge* (the "Texas Allonge"), which was affixed to and made part of the Texas Note, whereby the Texas Note was made payable to PS Funding. A true and correct copy of the Texas Allonge is attached hereto as **Exhibit 7**.

15.   Pursuant to the terms of the MLSA and the Texas Loan Purchase Certificate, ICG10 assigned all of its right, title and interest in and to the Texas Loan, Texas Note, Texas Deed of Trust, Texas Rents Assignment, and Texas Guaranty to PS Funding (the "Texas Assignment"). A true and correct copy of the Texas Assignment is attached hereto as **Exhibit 8**.

16.   Pursuant to the terms of the MLSA and the Texas Loan Purchase Certificate, ICG10 assigned all of its right, title and interest in and to the Texas Deed of Trust to PS Funding (the "Texas Deed of Trust Assignment"). The Texas Deed of Trust Assignment was duly recorded in the Official Records of Harris County, Texas on March 18, 2019, at Document No. RP-2019-105629. A true and correct copy of the Texas Deed of Trust Assignment is attached hereto as **Exhibit 9**.

17.   The Texas Loan Purchase Certificate, Texas Note, Texas Deed of Trust, Texas Rents Assignment, Texas Guaranty, Texas Allonge, Texas Assignment, Texas Deed of Trust Assignment, and any and all other documents referring to the Texas Loan are referred to collectively as the "Texas Loan Documents."

**C.   The Florida Loan**

18.   On or about December 20, 2018, pursuant to the MLSA, PS Funding and ICG10 entered into that certain *Loan Purchase Certificate* (the "Florida Loan Purchase Certificate"), whereby PS Funding succeeded to all right, title and interest of ICG10 under that certain loan made to Rockwell One Properties, LLC (the "Florida Borrower") by ICG10 (the "Florida Loan"). A true and correct copy of the Florida Loan Certificate is attached hereto as **Exhibit 10**.

19. Pursuant to the Florida Loan Certificate, ICG10 agreed to sell, and PS Funding agreed to purchase, all of ICG10's right, title and interest in and to the following:

   i. That certain *Promissory Note* dated December 20, 2018 (the "Florida Note"), whereby the Florida Borrower, as maker, agreed to pay to ICG10 the principal amount of $4,932,000.00, plus interest, pursuant to the terms of the Florida Note, with payments beginning February 1, 2019. A true and correct copy of the Florida Note is attached hereto as **Exhibit 11**.

   ii. That certain *Mortgage, Security Agreement, Assignment of Leases and Rents and Fixture Filing* dated December 20, 2018 (the "Florida Mortgage"), whereby the Florida Borrower pledged all of its right, title and interest in the real property located at 4646 Moncrief Road, Jacksonville, Florida 32209 (the "Florida Property"), to ICG10, to secure its obligations under the Florida Note. The Florida Deed of Trust was duly recorded in the Official Records of Duval County, Florida on January 16, 2019, at Document No. 2019012293. A true and correct copy of the Florida Mortgage is attached hereto as **Exhibit 12**.

   iii. That certain *Guaranty* dated December 20, 2018, made and executed by Kenirod C. Garcia (the "Florida Guarantor"), whereby the Florida Guarantor agreed to irrevocably, absolutely and unconditionally guarantee payment to ICG10 of any sums which the Florida Borrower owes ICG10, as well as the performance and discharge of all of the Florida Borrower's obligations, under the Florida Note (the "Florida Guaranty"). A true and correct copy of the Florida Guaranty is attached hereto as **Exhibit 13**.

20. Pursuant to the terms of the MLSA and the Florida Loan Purchase Certificate, ICG10 made and executed that certain *Allonge* (the "Florida Allonge"), which was affixed to and made part of the Florida Note, whereby the Florida Note was made payable to PS Funding. A true and correct copy of the Florida Allonge is attached hereto as **Exhibit 14**.

21. Pursuant to the terms of the MLSA and the Florida Loan Purchase Certificate, ICG10 assigned all of its right, title and interest in and to the Florida Loan, Florida Note, Florida Mortgage, and Florida Guaranty to PS Funding (the "Florida Assignment"). A true and correct copy of the Florida Assignment is attached hereto as **Exhibit 15**.

22. Pursuant to the terms of the MLSA and the Florida Loan Purchase Certificate, ICG10 assigned all of its right, title and interest in and to the Florida Mortgage to PS Funding (the "Florida Mortgage Assignment"). The Florida Mortgage Assignment was duly recorded in the Official Records of Duval County, Florida on January 16, 2019, at Document No. 2019012296. A true and correct copy of the Florida Mortgage Assignment is attached hereto as **Exhibit 16**.

23. The Florida Loan Purchase Certificate, Florida Note, Florida Mortgage, Florida Guaranty, Florida Allonge, Florida Assignment, Florida Mortgage Assignment, and any and all other documents referring to the Florida Loan are referred to collectively as the "Florida Loan Documents." The Texas Loan Documents and Florida Loan Documents are sometimes referred to collectively as the "Loan Documents." The Texas Loan and Florida Loan are sometimes referred to collectively as the "Loans" and individually as a "Loan." The Texas Borrower and the Florida Borrower are sometimes referred to individually as a "Borrower."

**D.     Defaults under the MLSA and the Loan Documents**

24. Pursuant to the MLSA, if the Borrower related to any Loan failed to make any of the first three monthly payments due to PS Funding, upon written notice from PS Funding, ICG10 was required to repurchase such Loan from PS Funding within five business days.

**The Texas Loan**

25. The Texas Borrower failed to make at least one of the first three monthly payments due to PS Funding. On or about December 6, 2018, PS Funding sent to the Texas Borrower that certain correspondence regarding the Texas Borrower's default

under the Texas Loan Documents (the "December 6, 2018 Default Correspondence"), whereby PS Funding notified the Texas Borrower that its failure to pay the November 1, 2018 payment constituted an event of default under the Texas Loan Documents. A true and correct copy of the December 6, 2019 Default Correspondence is attached hereto as **Exhibit 17**.

26. On or about February 11, 2019, PS Funding sent to ICG10 written notice of the Texas Borrower's default under the Texas Loan Documents and demanded that ICG10 repurchase the Texas Loan pursuant to the MLSA (the "Texas Notice of Default"). A true and correct copy of the Texas Notice of Default is attached hereto as **Exhibit 18**.

27. Despite the Texas Notice of Default, ICG10 has failed, and continues to fail and refuse, to cure the defaults under the MLSA by repurchasing the Texas Loan. Because of ICG10's failure and refusal to repurchase the Texas Loan, PS Funding has been damaged by ICG10 in the sum of no less than $1,578,335.76, plus continually accruing interest, default interest, late fees, attorneys' fees and costs, and any other fees and amounts owed pursuant to the Texas Loan Document.

**The Florida Loan**

28. The Florida Borrower failed to make at least one of the first three monthly payments due to PS Funding. On or about June 14, 2019, PS Funding sent to the Florida Borrower that certain correspondence regarding the Florida Borrower's default under the Florida Loan Documents (the "June 14, 2019 Default Correspondence"), whereby PS Funding notified the Florida Borrower that its failure to pay the April 1, 2019 payment constituted an event of default under the Florida Loan Documents. A true and correct copy of the June 14, 2019 Default Correspondence is attached hereto as **Exhibit 19**.

29. On or about April 9, 2019, PS Funding sent to ICG10 written notice of the Florida Borrower's default under the Florida Loan Documents and demanded that ICG10 repurchase the Florida Loan pursuant to the MLSA (the "Florida Notice of

1  Default"). A true and correct copy of the Florida Notice of Default is attached hereto
2  as **Exhibit 20**.

3        30.    Despite the Florida Notice of Default, ICG10 has failed, and continues
4  to fail and refuse, to cure the defaults under the MLSA by repurchasing the Florida
5  Loan. Because of ICG10's failure and refusal to repurchase the Florida Loan, PS
6  Funding has been damaged by ICG10 in the sum of no less than $5,343,837.52, plus
7  continually accruing interest, default interest, late fees, attorneys' fees and costs, and
8  any other fees and amounts owed pursuant to the Florida Loan Documents.

9        31.    As a result of ICG10's failure and refusal to comply with the MLSA, PS
10 Funding has been damaged by ICG10 in the sum of no less than $6,922,173.28, plus
11 continually accruing interest, default interest, late fees, attorneys' fees and costs, and
12 any other fees and amounts owed pursuant to the MLSA.

## FIRST CAUSE OF ACTION

### (Breach of Contract – Against ICG10 and Does 1 to 50)

15       32.    PS Funding realleges and incorporates by reference each and every
16 preceding allegation of this complaint as if set forth in full.

17       33.    The MLSA constitutes a valid and binding contractual relationship
18 between PS Funding and ICG10.

19       34.    PS Funding has fully performed all obligations under the MLSA, and
20 remains ready and willing to perform all terms of the MLSA.

21       35.    ICG10 materially breached, and continues to breach, its obligations
22 under the MLSA by, among other things, failing and refusing to repurchase the Texas
23 Loan and the Florida Loan, despite demand.

24       36.    PS Funding has declared ICG10 in default and has made demand on
25 ICG10, but it continues to breach the MSLA by failing and refusing to repurchase
26 the Texas Loan and the Florida Loan.

27       37.    As a direct and proximate result of ICG10's material breach, PS Funding
28 has been damaged and is entitled to judgment for the amounts due and owing under

the Loan Documents, plus accrued and accruing interest, attorneys' fees and costs.

38. As a direct and proximate result of ICG10's material breach, PS Funding has been damaged and is entitled to specific performance of the terms of the MLSA.

39. Pursuant to the MLSA, PS Funding is entitled to its reasonable attorneys' fees and costs in bringing this action.

## SECOND CAUSE OF ACTION

**(Specific Performance – Against ICG10 and Does 1 to 50)**

40. PS Funding realleges and incorporates by reference each and every preceding allegation of this complaint as if set forth in full.

41. PS Funding is entitled to specific performance of ICG10's contractual obligations, by requiring ICG10 to repurchase the Texas Loan and the Florida Loan.

42. As set forth above, unless ICG10 performs its duties and obligations owed to PS Funding under the MLSA and repurchases the Loans, PS Funding will continue to suffer irreparable harm.

43. PS Funding does not have an adequate remedy at law to compensate for these harms because the MLSA and the Loan Purchase Certificates involve real property, each of which is unique. PS Funding also does not have an adequate remedy at law to compensate it for these harms because ICG10's failure to comply with the terms of the MLSA and the Loan Purchase Certificates has caused, and is causing, PS Funding to continue to do business with borrowers that are in default under the Loans. PS Funding specifically bargained for the repurchase requirement, and ICG10's failure to comply with the terms of the MLSA has caused and is causing substantial irreparable harm to PS Funding.

## THIRD CAUSE OF ACTION

**(Fraud – Against All Defendants and Does 1 to 50)**

44. PS Funding realleges and incorporates by reference each and every preceding allegation of this complaint as if set forth in full.

45. As described in more detail above, ICG10 and Ifergane wrongfully and

with the intent to defraud, made representations to PS Funding to induce PS Funding to enter into the (i) MLSA; (ii) Texas Loan Purchase Certificate; and (iii) Florida Loan Purchase Certificate.

46. Particularly, ICG10 and Ifergane represented and warranted that, if a Borrower related to any Loan failed to make any of the first three monthly payments due to PS Funding, upon written notice from PS Funding, ICG10 would repurchase such Loan from PS Funding within five business days.

47. The Texas Loan Purchase Certificate was executed pursuant to, in accordance with, and in full incorporation of, the terms of the MLSA.

48. The Florida Loan Purchase Certificate was executed pursuant to, in accordance with, and in full incorporation of, the terms of the MLSA.

49. The representations made by ICG10 and Ifergane were false. PS Funding is informed and believes and, on that basis, alleges that the true facts were that ICG10, at the time it made the false promise to PS Funding, had no intention of ever repurchasing the Loans in conformance with the MLSA. Instead, ICG10 and Ifergane intended to keep the money from PS Funding for themselves, to use the proceeds to (i) invest in other opportunities and/or real properties; (ii) pay off their debts; and/or (iii) keep the proceeds for itself for use for any other purpose, including payment to principals, members, officers, agents and representatives. PS Funding is informed and believes and, on that basis, alleges that this is exactly what ICG10 and Ifergane did.

50. At the time of the above-described misrepresentations, PS Funding was ignorant of the falsity of ICG10's and Ifergane's representations and believed them to be true. In reliance on the representations, PS Funding paid to ICG10 good and valuable consideration for the purchase of the Loans.

51. PS Funding justifiably relied on ICG10's and Ifergane's representations, as ICG10 and Ifergane are engaged in the real estate business through the United States, and ICG10 and Ifergane held themselves out as knowledgeable and well-

versed in real estate transactions, including repurchase requirements.

52. As a result of ICG10's and Ifergane's fraud, PS Funding has suffered damages in an amount to be proven at trial.

53. PS Funding is informed and believes and, on that basis, alleges that the conduct of ICG10 and Ifergane was done with the intention of causing injury to PS Funding, and was fraudulent, willful, wanton, and malicious, so as to justify an award of exemplary and punitive damages. PS Funding is further informed and believes and, on that basis, alleges that ICG10 and Ifergane perpetrated the above-described acts in bad faith, in a knowing, willful, malicious and fraudulent manner and with the intent and purpose of advancing their own gain at the expense of PS Funding's rights and interests, and that ICG10 and Ifergane failed to cooperate with PS Funding to prevent the losses alleged above.

## **PRAYER FOR RELIEF**

WHEREFORE, PS Funding prays for judgment as follows:

### **On the First Cause of Action for Breach of Contract**

1. For damages in the amount of no less than $6,922,173.28, and any other amounts due and owing under the MLSA, including, but not limited to: (i) the principal amounts of the Loans; (ii) all interest accrued thereon; (iii) pre- and post-judgment interest; (iv) late fees; and (v) default interest; or, in the alternative, for specific performance of the terms of the MLSA, requiring ICG10 to repurchase the Loans;

2. For attorneys' fees and costs pursuant to the terms of the MLSA;

3. For costs of suit herein; and

4. For such other and further relief as this Court deems just and proper.

### **On the Second Cause of Action for Specific Performance**

1. For specific performance of ICG10's obligations under the MLSA, requiring ICG10 to repurchase the Texas Loan and the Florida Loan;

2. For attorneys' fees and costs;

3.   For costs of suit herein; and

4.   For such other and further relief as this Court deems just and proper.

### On the Third Cause of Action for Fraud

1.   For damages to be proven at trial;

2.   For punitive damages;

3.   For attorneys' fees and costs;

4.   For costs of suit herein; and

5.   For such other and further relief as this Court deems just and proper.

### On all Causes of Action

1.   For costs of suit incurred herein;

2.   For attorneys' fees as allowed by contract or law; and

3.   For such other and further relief as this Court deems just and proper.

Dated:   September 6, 2019          SNELL & WILMER L.L.P.


By: /s/ Andrew B. Still
Eric S. Pezold
Andrew B. Still

Attorneys for Plaintiff
PS Funding, Inc.